UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00353-CHL

NIKKI H.,[1]                                                                                              **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY,**                                                   **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff Nikki H. ("Claimant") proceeding *pro se*. Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 13, 15.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.    BACKGROUND**

On or about January 13, 2020, Claimant filed an application for disability insurance benefits ("DIB") alleging disability beginning on August 1, 2018. (R. at 29, 91, 94, 110, 112-13, 264-67.) On June 23, 2021, Administrative Law Judge ("ALJ") Neil Morholt ("the ALJ") conducted a hearing on Claimant's applications. (*Id.* at 50-85.) In a decision dated August 10, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

Commissioner to determine whether an individual is disabled. (*Id.* at 26-49.) In doing so, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2025. (*Id.* at 31.)

2. The claimant engaged in substantial gainful activity from August 1, 2018, the alleged onset date, through December 31, 2018. She has not engaged in substantial gainful activity since that time. (*Id.*)

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, asthma, obesity and schizoaffective disorder. (*Id.* at 32.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 33.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can: frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; and frequently balance, stoop, kneel, crouch and crawl. She can be frequently exposed to vibration, dust odors, fumes, gases or other pulmonary irritants and unprotected heights. She is capable of understanding, remembering and carrying out simple routine tasks and instructions in a routine work setting for extended two-hour periods before the need for a regularly scheduled break. She can have frequent interaction with supervisors and coworkers, and occasional interaction with the general public. She can adapt to occasional changes in a routine work setting, and she can make simple work-related decisions. (*Id.* at 35.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 40.)

7. The claimant . . . was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (*Id.* at 41.)

8. The claimant has at least a high school education. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2018, through the date of this decision. (*Id.* at 43.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on June 22, 2022. (*Id.* at 1-6, 238-40.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2022); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on July 7, 2022. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2022).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

      **B.**    **Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 404.1520 (2022).  In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1509 (2022).

>  (5)  Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

## C.  Claimant's Contentions

On September 14, 2022, after the filing of the administrative record, the Court entered an order directing each party to file by the deadlines specified therein "an appropriate memorandum of law specifying, inter alia, the numbered findings of the final decision [of the Commissioner] with which exception is taken and the specific errors alleged," which was to "be accompanied by a Fact and Law Summary on [a] form supplied by the Court." (DN 11, at PageID # 2988.) The order also required the Parties' memoranda to "cite the Court to the specific pages of the administrative record in support of the [P]arties' relative positions." (*Id.*) Despite these instructions, Claimant's *pro se* Fact and Law Summary and supporting memoranda contains no citations to either relevant legal authority or to the administrative record. (DN 13.) Instead, she merely listed four impairments and provided a paragraph for each explaining briefly why that impairment renders her disabled. (*Id.*) Her list included medication side effects, mental illness, herniated bulging disc/sciatica, and carpal tunnel. (*Id.*)

5

The Commissioner argued that given these absences, the Court should construe any argument by Claimant waived. (DN 15, at PageID # 2999 n.1.) It is true that generally issues averted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)), and that this waiver rule applies equally to *pro se* litigants. *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) (citing *Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 156-57 (6th Cir. 2003)). It is also true that Claimant is entitled to some leeway given her *pro se* status; this Court is required to liberally construe her filings and pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (internal citations omitted)); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012); *Haines v. Kerner*, 404 U.S. 519, 519 (1972). Yet "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). This liberal construction does not require the Court to make arguments not advanced by Claimant or to "conjure up unpleaded facts to support conclusory allegations." *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) (citation omitted); *see also Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012) ("Even a pro se pleading must provide the opposing party with notice of the relief sought, and it is not within the purview of the district court to conjure up claims never presented."). In sum, although the pleadings may be construed with leniency, the law nevertheless applies equally to *pro se* litigants and those represented by attorneys. *See Brock v. Hendershott,* 840 F.2d 339, 343 (6th Cir. 1988). Given this authority, while the Court will not find that Claimant has waived any argument, it will not correct the patent deficiencies in her filings

6

either.  Instead, the Court will review the ALJ's decision as to each of the impairments listed by Claimant in her filing for any errors.

### 1. Medication Side Effects

Claimant alleged that the medications she takes for her many impairments "are ruining concentration, memory, [and] daily life activities" and that they make her sleepy.  (DN 13, at PageID # 2993.)  While the ALJ's decision does not appear to specifically reference that she experienced any side effects from her medications, the mere fact that a piece of evidence is not cited in the ALJ's decision does not automatically invalidate his or her analysis.  *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020) ("The ALJ's decision may stand even though he did not expressly reference every piece of evidence in the record.").  The ALJ did note Claimant's testimony that she "had poor concentration and memory"; "had memory issues and would forget what she just did after just walking into the next room"; and "she spent most of her day lying down and often found it hard to get out of bed, with her taking two to three naps a day lasting a total of three hours."  (R. at 36.)  However, he found Claimant's description of her symptoms "not entirely consistent with the medical evidence and other evidence in the record. (*Id.*)  He noted that her "mental health examinations from her mental health providers have exhibited normal to mild findings," including normal concentration, attention, and memory as well as that she was alert on examination though he admitted the record also included "less optimal findings." (*Id.* at 37 (citing *id.* at 399, 406-07, 410-11, 419-20, 423, 432-33, 481, 488, 520, 577, 590, 675, 1157, 1164, 1219, 1238, 1283, 1287-88, 1320, 1484, 2070-71, 2076-77, 2156).)  He emphasized that "treatment notes indicated greater levels of functioning [than Claimant alleged], despite her not always following prescribed treatment" noting instances in which she reported not regularly taking her medications and missing medical appointments.  (*Id.* at 39 (citing *id.* at 423,

429, 2076).) In view of this discussion, Claimant's failure to provide any citations to the record supporting that she experienced side effects and reported the same to her providers is fatal to her claim. Without this evidence, the Court cannot meaningfully review whether it was error for the ALJ to have omitted any specific discussion of the side effects of her medications or any additional discussion of the symptoms Claimant claimed resulted from those side effects. In sum, Claimant has demonstrated no reversible error on this point.

2. **Mental Illness**

Claimant alleged that while her medications may treat her mental impairments, she worries about her kids being taken away and so she tries to deal with symptoms including voices and hallucinations on her own. (DN 13, at PageID # 2993.) She argued that she "shouldn't get punished for asking for help. (*Id.*) The ALJ included an extensive discussion of Claimant's mental health impairments. At step two, he found her schizoaffective disorder to be a severe impairment. (R. at 32.) At step four in his analysis of Claimant's RFC and as briefly discussed above, he summarized her testimony related to her mental health impairments as well as her mental health treatment records. (*Id.* at 36-37.) He noted that her description of her symptoms was disputed by the fact that mental health examinations generally resulted in "normal to mild findings," "[t]here was no evidence of any inpatient psychiatric hospitalizations during the relevant period," and Claimant had not had formal mental health treatment since late 2020. (*Id.* at 37.) Specific to her claims of voices and hallucinations, he noted that she reported the same to one consultative examiner but found that "other providers noted some evidence of hallucinations, but with no indications of ongoing delusions involving demons or destructive acts as she reported to [the consultative examiner], suggesting her overstating her current symptoms." (*Id.* at 38 (citing *id.* at 400, 407, 429, 1320, 1384).) He emphasized that just months after the consultative evaluation at

8

which she reported the hallucinations, "her own provider noted only that she was depressed, angry and paranoid with no other concerns, including no evidence of hallucinations or delusions." (*Id.* at 38-39 (citing *id.* at 1320, 1326).) In view of this discussion and the absence of any citation to legal authority or relevant portions of the administrative record, the Court finds no error in the ALJ's analysis. The ALJ may have disagreed with Claimant about the debilitating nature of her symptoms but that disagreement alone does not render his decision unsupported by substantial evidence. His analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). As with her medication side effects above, Claimant has failed to demonstrate any reversible error by the ALJ.

### 3. Herniated Bulging Disc/Sciatica

Claimant alleged that her discs rub together in her lower back causing "nerve pain" that radiates to her legs and feet causing weakness and numbness. (DN 13, at PageID # 2993.) She also argued that this condition is worsened by her obesity. (*Id.*) This complaint fairs no better than that regarding her mental impairments above in that the ALJ addressed the symptoms Claimant referenced in his decision and found them accommodated by the RFC he adopted.

The ALJ found at step two that Claimant's lumbar degenerative disc disease and obesity were severe impairments. (R. at 32.) In his step four evaluation of Claimant's RFC, he discussed her testimony that her lower back pain and obesity limited her activity levels and ability to stand, sit, lift, and carry. (*Id.* at 36.) He noted that the record supported that she complained to her

9

providers of "back pain with turning, and running down her legs." (*Id.* (citing *id.* at 405, 408, 494-95, 525, 1218, 1242, 1283-86, 1479, 1697, 2043, 2162, 2200)).) But he concluded, "[D]espite these complaints, examinations generally showed good range of motion, normal strength, normal sensation, normal reflexes, negative straight leg raise and a normal gait. There were also less optimal findings, including at times hip tightness, lumbar weakness, tenderness and decreased range of motion." (*Id.* at 36 (citing *id.* at 418, 425, 495-503, 528-29, 532, 545, 577, 675, 1220, 1238, 1243, 1484-87, 1698, 1703-04, 2044, 2167-68, 2197, 2204)).) He noted that diagnostic imaging confirmed building discs in her lumbar spine, she takes medications for these conditions, and she tried both physical therapy and injections. (*Id.* at 36 (citing *id.* at 411, 494, 501, 529, 605, 1156, 1211, 1221, 1234, 1236, 1242-82, 1703, 1705, 1865, 1909, 2163)).) He emphasized that despite her complaints regarding her back, the record did not support that she experienced significant pain until January 2020 after a fall at work. (*Id.* at 40 (citing *id.* at 495-503, 1218-20)).) Ultimately, he concluded that her back and obesity would permit her to do less than full range of light work with certain restrictions that he encapsulated in his RFC determination. (*Id.* at 40.) The Court finds that the ALJ supported his assessment of Claimant's back conditions and obesity with substantial evidence. Claimant has done no more than reiterate complaints the severity of which the ALJ either rejected or found were accommodated by his RFC. Without any legal authority to the contrary or any record cites to support that the ALJ mischaracterized the record, Claimant has again failed to demonstrate any reversible error.

       **4.    Carpal Tunnel**

Claimant alleged that she had been told she needed carpal tunnel surgery but that getting the surgery would keep her from taking care of her kids. (DN 13, at PageID # 2994.) She emphasized that she still wears braces to combat her symptoms, which are exacerbated by

repetitive motion. (*Id.*) The ALJ found at step two that Claimant's carpal tunnel was not a severe impairment. (R. at 32.) He wrote, "[Claimant's] bilateral carpal tunnel syndrome was also noted prior to the alleged onset date with indications that it was relieved with injections at the time." (*Id.* (citing *id.* at 770).) He did not specifically discuss her carpal tunnel syndrome at step four in his determination of her RFC. (*Id.* at 35-40.) But Claimant provided neither a citation to any provider who placed any limitations on her related to her carpal tunnel nor any citation to any evidence in the record indicating a greater need for discussion by the ALJ than that he provided. In the absence of the same, the Court again finds that Claimant has failed to demonstrate reversible error.

### 5. Conclusion

As Claimant has failed to demonstrate any error in the ALJ's discussion or lack thereof of the issues listed in her brief, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the final decision of the Commissioner will be **AFFIRMED**.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

June 30, 2023

cc: Counsel of Record, *Pro se* Plaintiff